UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK E. HUFFER,

                    Plaintiff

          v.                                    Case No. 1:10-cv–312-HJW

MARK R. BOGEN, et al.,

                    Defendants

## ORDER

This matter is before the Court upon the "Motion to Dismiss" (doc. no. 29) by Mel Planas, Kristy Sommers, and Warren County, Ohio (collectively the "Warren County defendants"). Also pending is the "Motion for Judgment on the Pleadings, or in the Alternative, to Dismiss" (doc. no. 30) by James Burns, Matthew Graber, Andrea Hicks, Michael McCutchan, Brenda Morgan, Kristy Whaley, and the City of Lebanon (collectively the "Lebanon defendants"). Plaintiff opposes both motions. Having fully considered the record, including the pleadings and the parties' briefs, the Court will <u>grant</u> both motions for the following reasons:

## I.   Background and Factual Allegations

In his complaint, plaintiff indicates he was arrested for domestic violence on January 6, 2007 (doc. no. 1 at ¶ 2) while on diversion from a previous domestic violence case (¶ 6). On January 8, 2007, he pleaded not guilty (¶ 4), was "held without bond," and was incarcerated for an unspecified period of time (¶ 5). He was released but then re-arrested for violating a "Temporary Protection Order" (¶ 5). Plaintiff was incarcerated until March 5, 2007, when his counsel moved to set aside or reduce

plaintiff's bond.  On March 5, 2007, plaintiff pleaded guilty in two of his criminal cases (referred to as "CRB 0700196 and CRB 0600914"), and he indicates the remaining criminal charges against him were "nolled" or dismissed (¶¶ 6-7, 19).

Approximately one year later, in February of 2008, plaintiff moved to withdraw his guilty pleas (¶ 19). On April 3, 2008, Lebanon Municipal Judge Mark E. Bogen found that plaintiff had entered his guilty pleas voluntarily and knowingly, and denied the motion (¶ 20).  Plaintiff appealed (¶ 21).  On May 18, 2009, the Court of Appeals for the Twelfth District of Ohio issued a decision finding that the partially-inaudible tape recording of the plea proceeding was not sufficient for the appellate court to ascertain that a proper Rule 11 colloquy had taken place (doc. no. 1, Ex. 1 "Opinion" at ¶¶ 15, 19, 24).  The Court of Appeals therefore granted plaintiff's motion to withdraw his guilty pleas, and reversed and remanded the case for further proceedings.  Neither plaintiff's present complaint nor his subsequent briefs indicate the results of those further proceedings, although he complains that the prosecutor "continued to pursue the alleged felony offenses" against him (doc. no. 1 at ¶ 37).

The following year on May 17, 2010, plaintiff filed a lengthy seven-count federal complaint against thirteen defendants, including several prosecutors, probation officers, police officers, Lebanon Municipal Judge Mark E. Bogan, the Clerk of the Lebanon Municipal Court, Warren County (Ohio), the City of Lebanon, plaintiff's ex-wife Vivian Huffer, and her sister Danielle Bishop.  Essentially, plaintiff has sued anyone with a perceived role in his arrest and prosecution for domestic violence.  In his complaint, plaintiff makes the following claims: Count One asks for a

"declaration" that Judge Bogen violated plaintiff's due process rights under the Fifth Amendment (doc. no. 1 at ¶¶ 25-28). Judge Bogen has been dismissed from this action by separate order (doc. no. 28).

In Count Two, plaintiff alleges violation of 42 U.S.C. § 1983 based on wrongful imprisonment (¶¶ 28-33). He alleges that the City of Lebanon "ratified and adopted" Judge Bogen's actions, and that the individual Lebanon defendants "took actions" which violated his civil rights. With respect to the Warren County defendants, he complains that the probation officer Sommers "participated in the efforts to incarcerate . . . . and/or prosecute Mr. Huffer, in the absence of probable cause, for impermissible periods of time, without bond" (¶ 32). Plaintiff recites that the defendants deprived him of his civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.

In Count Three, plaintiff alleges that the defendants "conspired to violate 42 U.S.C. § 1983" (¶¶ 34-46). Plaintiff alleges that Hicks and Graber, as prosecutors for the City of Lebanon, "assisted" Judge Bogen in the violation of plaintiff's civil rights and "took actions" which furthered the conspiracy (¶¶ 35, 43). He alleges that probation officer Sommers "took actions" which violated his civil rights "by arresting and/or detaining and/or conducting an unreasonable search and seizure of Mr. Huffer's person and/or property" (¶ 40). Plaintiff also contends that:

> Warren County, Ohio, acting through its prosecutor Mel Planas, furthered the conspiracy . . . by having [an] indictment issued against Mr. Huffer based upon materially false information and upon the same facts, which Mr. Huffer had been prosecuted for in the Lebanon Municipal Court. Defendant Planas, as a policy maker and

> **the moving force behind this unconstitutional misconduct has continued to assert the felony offenses, which were based upon the same alleged conduct for which the misdemeanor charges were brought (¶ 36).**

Plaintiff complains that although his guilty pleas were withdrawn, the prosecutor (Planas) "continued to pursue the alleged felony offenses" against him (¶ 37).

In Count Four, plaintiff alleges violation of 42 U.S.C. § 1983 based on malicious prosecution (¶¶ 47-52). Plaintiff contends in conclusory fashion that his ex-wife and unspecified "others" initiated his prosecution "with malice" which resulted in "the malicious prosecution of Mr. Huffer, in the absence of probable case for the alleged Domestic Violence offense and the alleged Violation of a Temporary Protection Order" (¶ 48). Plaintiff complains that the police officers (McCutchan and Burns) "participated" by filing criminal charges against him (¶ 49).

In Counts Five and Six, plaintiff generally alleges deprivation of his substantive and procedural due process rights because the defendants "each took actions" based on his ex-wife's allegedly "spurious and false" allegations of domestic violence which led to his "false arrest, wrongful detention, and malicious prosecution" (¶¶ 53-60). By previous order, this Court has already held that plaintiff has not pleaded a cognizable deprivation of any constitutional due process rights (doc. no. 28 at 9-10).

The next count is incorrectly numbered as another Count Six (¶¶ 61-66) and is captioned as a state law claim of "malicious prosecution." Plaintiff alleges that police officers (McCutchan and Burns) maliciously "initiated the criminal proceedings against each Plaintiff (sic) without probable cause" and that the probation officers

(Sommers and Whaley) "participated in the malicious prosecution of Mr. Huffer by pursuing probation violations and/or by engaging in other misconduct" (¶ 64).[1] The "other misconduct" is not specified.

The next count (labeled as "Sixth Claim: Tort of False Arrest" at ¶¶ 67-70) and Count Seven ("False Imprisonment" at ¶¶ 71-74) allege that plaintiff was "arrested and detained without probable cause, for alleged Domestic Violence and Violation of Temporary Protection Order" (¶ 68), and that the "unlawful imprisonment of Mark E. Huffer was done without probable cause" (¶ 72). Plaintiff seeks compensatory damages of over $250,000, punitive damages over $1,000,000, attorneys fees, costs, and other available relief.

The Lebanon defendants answered and asserted defenses, including that the defendants' actions were based on probable cause, that their actions did not violate any of plaintiff's constitutional rights, that they are entitled to qualified and/or absolute immunity, that the complaint fails to state any claims for relief against them, and that plaintiff's claims for false arrest and violation of § 1983 based on false imprisonment are time-barred (doc. no. 15).

The Warren County defendants also answered and asserted similar defenses (doc. no. 17). Both sets of defendants moved to dismiss and/or for judgment on the pleadings (doc. nos. 29, 30). Plaintiff responded (doc. nos. 34, 41), and defendants replied (doc. nos. 40, 42). Defendants have jointly moved to stay discovery (doc. no.

---

[1]Plaintiff's Complaint actually contains <u>three</u> claims mislabeled as Count Six or Sixth Claim. Sommers is mentioned in the first two (¶¶ 58, 64).

42), and plaintiff has not opposed such request. These motions are ripe for consideration.

## II.  Issues Presented

Defendants assert that: 1) the prosecutors (Planas, Graber, and Hicks) are entitled to absolute prosecutorial immunity; 2) the probation officers (Sommers and Whaley) and the Clerk of the Lebanon Municipal Court (Morgan) are entitled to absolute quasi-judicial immunity; 3) the police officers (McCutchan and Burns) are entitled to qualified immunity; 4) the complaint fails to state a claim for conspiracy, malicious prosecution, or violation of § 1983 based on malicious prosecution; 5) Warren County and the City of Lebanon are not liable on a respondeat superior basis; 6) the state claims for false arrest and false imprisonment, and the § 1983 claim based on "wrongful imprisonment" are time-barred. Both motions present similar arguments and will be considered together.

## III.  Analysis

### A.  Introduction

Plaintiff's case is premised on his notion that the victim's report of domestic abuse was "false" or "unsubstantiated." He then complains in attenuated fashion that the subsequent determination of his probation violation, arrest, detention, and prosecution were therefore not based on probable cause and were unlawful, and therefore, violated his constitutional rights and also amounted to a conspiracy against him as well as various torts under state law.

### B.  Whether the Defendant Prosecutors are Entitled to Prosecutorial Immunity

Plaintiff sues three prosecutors: Planas, Graber and Hicks. Although plaintiff alleges that Planas was responsible for having an indictment issued against him based upon the victim's allegedly "false" information (doc. no. 1 at ¶ 36), the prosecutor's decision to initiate and pursue  criminal charges against plaintiff was fully protected by absolute immunity.  It is well-settled that prosecutors are entitled to absolute prosecutorial immunity for the initiation and prosecution of criminal cases.  Imbler v. Patchman, 424 U .S. 409, 430-31 (1976);  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

The United States Supreme Court has explained that absolute immunity is afforded to prosecutors because exposing them to § 1983 lawsuits based on performance of their official duties would divert their "energy and attention . . . from the pressing duty of enforcing the criminal law." Imbler, 424 U.S. at 425;  and see, Ireland v. Tunis, 113 F.3d 1435, 1444 (6th Cir. 1997) (observing that in Imbler, the Supreme Court recognized the importance of prosecutorial immunity because retaliatory suits "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate").

Although plaintiff disputes the victim's allegations of domestic violence and his resulting prosecution, prosecutors have absolute immunity from suit for claims arising from their evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, including probable cause determinations. See Koubriti v. Convertino, 593 F.3d 459, 467 (6th Cir. 2010);  Spurlock v. Thompson, 330 F.3d 791,

797 (6th Cir. 2003). For example, a prosecutor enjoys absolute immunity when he prepares and fills out an information and files a motion for an arrest warrant. Kalina v. Fletcher, 522 U.S. 118, 129-131 (1997). Absolute immunity protects from suits brought under §§ 1983 and 1985, as well as claims of malicious prosecution. Koubriti, 593 F.3d at 459; Grant v. Hollenbach, 870 F.2d 1135, 1136, fn.1 (6th Cir. 1989).

Plaintiff's complaint indicates that the prosecutor (Planas) was performing his official role in initiating and prosecuting criminal charges. Absolute immunity applies where, as here, the prosecutor's activities were intimately associated with the judicial phase of the criminal process. Imbler, 424 U.S. at 430; Butz v. Economou, 438 U.S. 478, 508-09 (1978); Holloway v. Brush, 220 F.3d 767, 774 (6th Cir. 2000); Grant 870 F.2d at 1138. The Grant case involved facts similar to the present case. There, the plaintiff claimed that two prosecutors and other individuals, including his ex-wife, had conspired to bring false charges against him before the grand jury. The Court of Appeals for the Sixth Circuit affirmed the district court's holding that the prosecutors were entitled to absolute immunity in their role as advocates. Id. at 1136.

Plaintiff's allegations against the other prosecutors (Graber and Hicks) are entirely vague and unsupported by any specific facts. In his brief, plaintiff attempts to circumvent absolute prosecutorial immunity by arguing that "the allegations in the first paragraph of the Complaint . . . raise issues which are outside of the traditional prosecutorial functions" (doc. no. 34 at 4). However, his "saying so" does not make it so. The allegations in the first paragraph of the complaint are conclusory and fail to allege any acts "outside of traditional prosecutorial functions." That introductory

paragraph merely states that plaintiff was "maliciously prosecuted" without "probable cause" (doc. no. 1 at ¶ 1). Contrary to plaintiff's bald assertion, the decision to proceed with prosecution based on the victim's allegations of domestic violence by plaintiff and plaintiff's violation of a "Temporary Protection Order" (¶ 1) were well within traditional prosecutorial functions. See, e.g., <u>Easley v. Dietrich</u>, Slip Copy, 2011 WL 1811065 (W.D.Mich.) ("Obviously, bringing criminal charges against plaintiff is part of the prosecutor's role as an advocate.").

Moreover, absolute prosecutorial immunity would not be defeated even if the prosecutors had acted wrongfully. <u>Burns v. Reed</u>, 500 U.S. 478, 484 (1991) ("this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial"); <u>Grant</u>, 870 F.2d at 1138 ("Absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously"); <u>O'Neal v. O'Neal</u>, 23 Fed. Appx. 368, 370 (6th Cir. 2001) (same).

Plaintiff complains that although the state appellate court allowed him to withdraw his guilty pleas, the prosecutor "has continued to pursue" felony offenses against him (doc. no. 1 at ¶ 37). Immunity is not defeated merely because a criminal defendant prevails on the appeal of his criminal case. <u>Grant</u>, 870 F.2d at 1138. In his brief, plaintiff explains his theory that "the probation officer along with the prosecutor seek to have charges which have been reversed and remanded, remain pending against Mr. Huffer to perpetuate the appearance of a criminal record for Mr. Huffer" (doc. no. 34 at 8). Plaintiff cites no authority for the proposition that the prosecutor could not proceed with criminal charges after plaintiff withdrew his guilty pleas.

Plaintiff fails to comprehend that upon withdrawal of his guilty pleas, the criminal charges remained pending and/or could be reinstated. Plaintiff ignores the appellate decision's language that the case was remanded "for further proceedings." The complaint states no cause of action on such basis. All three prosecutors are entitled to absolute prosecutorial immunity.

## C. Whether the Defendant Probation Officers are Entitled to Quasi-Judicial Immunity

The defendant probation officers (Sommers and Whaley) are entitled to quasi-judicial immunity for performing their official duties. In the complaint, plaintiff alleges in conclusory fashion that Sommers "maliciously prosecuted Mr. Huffer absent probable cause with the intention of maintaining felony offenses on the criminal record of Mr. Huffer" (doc. no. 1 at ¶ 1). Plaintiff repetitively alleges that Sommers and Whaley "participated in the efforts to incarcerate Mr. Huffer and/or prosecute Mr. Huffer, in the absence of probable cause, for impermissible periods of time, without bond . . . and intentionally and/or recklessly and/or maliciously acted to deprive the Plaintiffs [sic] the civil rights guaranteed to him"(¶ 32);[2] "knowingly, and/or intentionally and/or recklessly took actions which violated [his] civil rights . . . by arresting and/or detaining and/or conducting an unreasonable search and seizure of Mr. Huffer's person and/or property" (¶ 40); "took actions knowingly and intentionally, which deprived Mark E. Huffer of his Due Process rights" (¶¶ 54, 58); and "participated in the malicious prosecution of Mr. Huffer, by pursuing probation

---

[2]Plaintiff's complaint contains paragraph "32"; followed by another paragraph "32"; the language quoted herein is from the first paragraph 32.

violations and/or by engaging in other misconduct intended to harass, detain and cause further distress and anxiety to Mr. Huffer for spurious charges" (¶ 64).

As defendants aptly note, "[n]othing can be gleaned from the Complaint except that Whaley [and Sommers] participated in the judicial process as probation officer[s]" (doc. no. 30 at 9). Plaintiff's attenuated allegations are conclusory and essentially devoid of any facts regarding specific acts by the probation officers. To the extent that Sommers and Whaley apparently recommended that plaintiff had violated his probation, and thus, set the wheels in motion for his subsequent prosecution on domestic violence charges, this fits squarely within their official duties for which they are fully entitled to immunity. Absolute quasi-judicial immunity from civil liability applies to probation officers because they are essentially performing functions for the court. Stump v. Sparkman, 435 U.S. 349, 363-64 (1978); Lawrence v. Welch, 531 F.3d 364, 372-73 (6th Cir. 2008); and see, e.g., Balas v. Leishman-Donaldson, 1992 WL 217735, at *15 (6th Cir. 1992) ("[w]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. . . . All of the same considerations that would apply to the judge apply to the probation officer"). Plaintiff fails to understand that a probation officer is essentially an arm of the court, not a prosecutor.

Absolute judicial immunity extends "in the form of quasi-judicial immunity, to any person acting as an arm of the absolutely immune judicial officer." Coleman v. Gov. of Michigan, 2011 WL 894430 (6th Cir. (Mich.)). Probation officers are entitled to absolute quasi-judicial immunity from lawsuits under § 1983 when they determine

that a person has violated the conditions of his probation.  <u>Timson v. Wright</u>, 532 F.2d 552, 553 (6th Cir. 1976);  <u>Loggins v. Franklin Co, Ohio</u>, 218 Fed. Appx. 466, 476 (6th Cir. 2007).  Although plaintiff apparently disagrees with the determination that he had violated his probation, the court probation officers are entitled to quasi-judicial immunity for performing their official duties.

### D.  Whether the Clerk of the Lebanon Municipal Court is Entitled to Immunity

The complaint alleges that the Clerk of the Lebanon Municipal Court (Morgan) acted with "reckless disregard" of plaintiff's civil rights by "participating" in the "unlawful and unconstitutional detention without bond" of plaintiff and "ratified" the judge's decision to not grant the bond (doc. no. 1, ¶¶ 16, 30 and 35).  Defendants aptly assert that "this Court and these Defendants are left to speculate what it is Morgan did or failed to do" (doc. no. 30 at 7).  Plaintiff appears to be attempting to sue the Clerk of Court for carrying out official duties regarding court orders.

In his brief, plaintiff contends that  "each and every state actor should have been aware that the actions needed to effectuate [Judge Bogen's] order were violations of Mr. Huffer's rights" (doc. no. 41 at 20).  However, "it is well established that judges and other court officers enjoy absolute immunity from suit by claim arising out of performance of judicial or quasi-judicial functions."  <u>Denman v. Leedy</u>, 479 F.2d 1097, 1098 (6th Cir. 1973) (finding that municipal court clerk was immune from suit).  "[A] clerk who issues a warrant at the direction of the judge is performing a function to which absolute immunity attaches."<u>Id</u>.  A court clerk who performs tasks that are an integral part of the judicial process is entitled to absolute immunity

from suits for damages. Johnson v. Turner, 125 F.3d 324, 333 (6th Cir.1997); Foster v. Walsh, 864 F.2d 416, 417-18 (6th Cir. 1988). Here, the Clerk of Court was merely performing her official duties as part of the judicial process, and plaintiff's complaint fails to state a plausible claim against her. This defendant is entitled to absolute quasi-judicial immunity.

The Court further observes that the caption of the complaint indicates that plaintiff is suing the individual (governmental) defendants in their official and individual capacities. The doctrine of absolute immunity protects judges and quasi-judicial officers from civil suit in both their official and individual capacities. Dixon v. Clem, 492 F.3d 665 (6th Cir. 2007); DePiero v. City of Macedonia, 180 F.3d 770, 783 (6th Cir.1999). This immunity protects from demands for monetary relief, including punitive damages. Butz, 438 U.S. at 508-09; Timson, 532 F.2d at 553.

E. Whether the Defendant Police Officers are Entitled to Qualified Immunity

The defendant police officers are entitled to qualified immunity unless: (1) they violated a constitutional right; and (2) the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001). Officers may invoke the qualified immunity defense if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. at 236. "The relevant inquiry is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Here, the plaintiff's complaint merely alleges in conclusory fashion that the police officers "participated in an unlawful and unconstitutional arrest" and took unspecified "actions" to further the purported conspiracy (doc. no. 1, ¶¶ 17, 18 and 31). Although the complaint alleges repeatedly that the police officers "took actions" (doc. no. 1, ¶¶ 31, 39, 41, 44, 49, 54, 58 and 64), it fails to provide any specific facts for plaintiff's claims. The complaint recites that the defendants violated plaintiff's constitutional rights, but states nothing other than the bald conclusion that the officers arrested him "without probable cause."  The complaint merely contains labels and conclusions not adequately based on actual facts.

Plaintiff contends his arrest violated the Fourth Amendment because, in his opinion, the victim's allegations of domestic violence were unsubstantiated. However, "a crime victim's accusation standing alone can establish probable cause" for arrest. Gardenhire v. Schubert, 205 F.3d 303, 322 (6th Cir. 2000); Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir.1999) (citing United States v. Maryland, 479 F.2d 566, 569 (5th Cir. 1973) ("the information given to law enforcement authorities by the victim of the crime immediately after its occurrence was clearly sufficient to supply probable cause for appellant's arrest").  Moreover, "an arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment." Voyticky v. Village of Timberlake, 412 F.3d 669, 677 n.4 (6th Cir. 2005).

The complaint indicates that the police officers initially arrested plaintiff for

reported domestic violence while he was on diversion from other domestic violence charges, and later re-arrested plaintiff for violating a protective order (¶ 5).  The police officers are entitled to qualified immunity because they could reasonably believe the arrests of plaintiff were lawful under the circumstances.  <u>Kennedy v. City of Villa Hills, Ky.</u>, 635 F.3d 210, 214 (6th Cir. 2011).  The complaint fails to state any facts indicating any violation of plaintiff's constitutional rights by the arresting officers, and these defendants (McCutchan and Burns) are entitled to qualified immunity.

**<u>F.  Whether Counts Three, Four, and Six Fail to State a Claim for Relief</u>**

**1.  <u>Standard of Review</u>**

The Warren County defendants assert that Counts Three, Four, and Six fail to state a claim and should be dismissed.[3]  They moved for dismissal pursuant to Rule 12(b)(6) after filing their answer, and thus, their motion will be considered as a motion for judgment on the pleadings pursuant to Rule 12(c).  Fed.R.Civ.P. 12(c).  A court will grant a Rule 12(c) motion if the moving party is entitled to judgment as a matter of law. <u>JP Morgan Chase Bank, N.A. v. Winget</u>, 510 F.3d 577, 581 (6th Cir. 2007). The same legal standard applies when deciding motions pursuant to Rule 12(b)(6) for failure to state a claim or Rule 12(c) for judgment on the pleadings. Fed.R.Civ.P. 12(b)(6) and (c);  <u>Sensations, Inc., v. City of Grand Rapids</u>, 526 F.3d 291, 295 (6th Cir. 2008);  <u>Tucker v. Middleburg-Legacy Place, LLC</u>, 539 F.3d 545, 549-50 (6th Cir. 2008). Although  the standard for Rule 12(b)(6) will be discussed here, the actual ruling will be pursuant to Rule 12(c).

---

[3]This argument refers to the second Count Six (¶¶ 61-66).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint, and the first step is to identify any conclusory allegations. Ashcroft v. Iqbal,129 S.Ct. 1937, 1950 (2009). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic, 550 U.S. at 555; Iqbal, 129 S.Ct. at 1949. Labels, conclusions, and formulaic recitations of the elements of a cause of action "will not do." Id.

To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Bell Atlantic, 550 U.S. at 556 n.3.

### 2. Count Three: "Conspiracy to Violate 42 U.S.C. § 1983

Although plaintiff generally alleges in Count Three (¶¶ 34-46) that the defendants "conspired" to violate 42 U.S.C. § 1983, this claim is entirely conclusory. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." Revis v. Meldrum, 489 F.3d 273, 290 (6th Cir. 2007).

Even taking any well-pleaded factual allegations as true for purposes of Rule 12, plaintiff has not alleged facts indicating that the defendants actually entered into any kind of agreement to violate his rights.

Plaintiff's complaint does not identify any relevant statute for his cause of action, but refers to Equal Protection and may be asserting a claim under 42 U.S.C. § 1985(3).  For such a claim, the elements are: (1) a conspiracy (of two or more persons); (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation of rights of the plaintiff. <u>Volunteer Medical Clinic, Inc. v. Operation Rescue</u>, 948 F.2d 218, 223 (6th Cir.1991).

Plaintiff's complaint fails to set forth facts establishing these elements and does not meet basic pleadings requirements for stating a conspiracy claim under 42 U.S.C. § 1985(3).  Except for conclusory statements, plaintiff's complaint contains no factual allegations that the defendants actually engaged in a conspiracy.  <u>Farat v. Jopke</u>, 370 F.3d 580, 599 (6th Cir. 2004) (holding that claims of conspiracy must be pled with some specificity, and that vague conclusory allegations unsupported by material facts are insufficient to state a § 1985 claim).  Plaintiff has not alleged himself to be the victim of any class-based discrimination.[4]  He merely asserts that the

---

[4]Although plaintiff refers to "Equal Protection" and the Fourteenth Amendment (doc. no. 1 at ¶ 43), he does not identify himself as a member of any group, nor does he allege that he has been discriminated against in any way. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Under the Equal Protection

defendants performed their official duties and labels these duties as being in furtherance of a conspiracy. See <u>Kensu v. Haigh</u>, 87 F.3d 172, 175-76 (6th Cir. 1996). As the United States Supreme Court has explained, more is required than "unadorned, the-defendant-unlawfully-harmed me accusations." <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Bell Atlantic</u>, 550 U.S. at 550). The complaint states no conspiracy claim of any kind, and this Court has so indicated by prior order (doc. no. 28 at 11).

The failure to state a conspiracy claim against the individual defendants is dispositive of any conspiracy claim against Warren County and the City of Lebanon. Although plaintiff alleges that "Warren County, Ohio, acting through its prosecutor Mel Planas, furthered the conspiracy . . ." (doc. no. 1 at ¶ 36), the theory of respondeat superior does not provide a basis for liability in civil rights actions. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691-92 (1978); <u>Street v. Corr. Corp. of Am.</u>, 102 F.3d 810, 817-18 (6th Cir. 1996). The liability of a local government depends "solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." <u>Holloway v. Brush</u>, 220 F.3d 767, 772 (6th Cir. 2000) (en banc); <u>Caudill v. Hollan</u>, 431 F.3d 900, 914-15 (6th Cir. 2005). Plaintiff's complaint identifies no "policy" or custom for which the Lebanon defendants or the Warren County defendants were responsible.

   **3. Count Six (state law claim for "Malicious Prosecution") and Count Four:**

_____

Clause, "the states cannot make distinctions [that] . . . burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." <u>Radvansky v. City of Olmstead Falls</u>, 395 F.3d 291, 312 (6th Cir. 2005).

**"Violation of § 1983 based on Malicious Prosecution"**

For plaintiff's state claim of malicious prosecution (doc. no. 1 at ¶¶ 61-66), the elements are: (1) malice in instituting and continuing the prosecution; (2) termination of the proceedings in favor of the accused; and (3) a lack of probable cause. Coker v. Summit County Sheriff's Dep't, 90 Fed. Appx. 782, 786 (6th Cir. 2003) (citing Trussell v. General Motors Corp., 53 Ohio St. 3d 142, 145 (1990)). Plaintiff's complaint does not adequately plead these elements.

Ohio law provides that malice is "the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances that the law will imply an evil intent." Criss v. Springfield Township, 56 Ohio St.3d 82, 84-85 (1990). "[I]t means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." Id. Plaintiff's allegations of "malice" by the Lebanon and Warren County defendants are conclusory. For example, plaintiff complains that the probation officers "participated . . . by pursuing probation violations" (¶ 64). Similarly, plaintiff complains that the police officers "initiated the criminal proceedings . . . without probable cause" and characterizes this as "malicious" (¶ 64). The complaint also contradicts itself, as it indicates the defendant officials actually proceeded against plaintiff based on reported domestic violence (¶¶ 2, 48, 62) and plaintiff's violation of the court's protective order (¶ 5), which would provide grounds for lawful arrest. Plaintiff contends in conclusory fashion that the police officers arrested him "based upon allegations which did not constitute Domestic Violence or violation of a

Temporary Protection Order" (¶¶ 17-18). Conspicuously absent are any alleged facts in the complaint that would indicate actual malice on the part of the prosecutors, probation officers, or police officers. The complaint's conclusory allegations fail to state a claim for malicious prosecution.

The United States Supreme Court has explained that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Plaintiff's contrived allegation in his introductory paragraph to the effect that the Warren County defendants prosecuted him "with the intention of maintaining felony offenses on the criminal record of Mr. Huffer, which have no merit" (¶ 1) is not a "well-pleaded" fact and need not be taken as true. Such allegation is rank speculation not supported by any actual facts that might raise a reasonable inference of "malice."

With respect to the second element of a state claim of malicious prosecution, plaintiff alleges that the criminal proceedings were "terminated" in his favor (¶ 63) and attaches the state appellate decision (Ex. 1). Plaintiff mischaracterizes that decision, which vacated plaintiff's guilty pleas and remanded for further proceedings. Plaintiff does not indicate the result of those further proceedings, but complains that the prosecutor continued to pursue an indictment against him. Given the remand for further proceedings and the ongoing prosecution, plaintiff cannot accurately claim that the criminal case was "terminated in his favor."

The third required element for a state malicious prosecution claim is "lack of probable cause."  Probable cause is generally defined as a "fair probability" that the individual to be arrested has either committed or intends to commit a crime.  United States v. Sokolow, 490 U.S. 1, 7 (1989));  Northrop v. Trippett, 265 F.3d 372, 379 (6th Cir. 2001).  "[T]he want of probable cause is the real gist of the [malicious prosecution] action."  Harris v. United States, 422 F.3d 322, 328 (6th Cir. 2005).  "The Ohio courts define probable cause for the purposes of a malicious prosecution claim as 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious [individual] in the belief that the person accused is guilty of the offense with which he is charged.' " Harris v. Bornhorst, 513 F.3d 503, 520 (6th Cir. 2008).

Defendants point out that the plaintiff acknowledges in his complaint (at ¶ 36) that an indictment was obtained against him.  They assert that the "existence of an indictment provides a presumption of the existence of probable cause" for the plaintiff's prosecution (doc. no. 29 at 10). "[I]t has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006) (quoting Higgason v. Stephens, 288 F.3d 868, 876- 77 (6th Cir. 2002)); United States v. Crawford, 60 Fed.Appx. 520, *532, 2003 WL 343250, *10 (6th Cir.) (same); and see, United States v. Calandra, 414 U.S. 338, 345 (1974)("an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or

incompetent evidence").

In his response, plaintiff does not address the defendants' legal argument, and instead, merely repeats in conclusory fashion that he was maliciously prosecuted "in the absence of probable cause" and "incarcerated on charges which lacked probable cause to arrest" (doc. no. 34 at 10). Plaintiff's complaint fails to allege specific facts in support of the required elements of malice, termination of the proceedings in plaintiff's favor, and a lack of probable cause.

Plaintiff also asserts a violation of § 1983 based on malicious prosecution. In Count Four (¶¶ 47-52), he alleges that "the prosecutions of Mr. Huffer were initiated with malice, by Defendants Vivian Huffer . . . Danielle Bishop, and others, which resulted in the malicious prosecution of Mr. Huffer, in the absence of probable cause for the alleged Domestic Violence offense and the alleged Violation of a Temporary Protection Order" (doc. no. 1 at ¶ 48). Plaintiff claims that several police officers "knowingly participated . . . by filing the charges . . ." (¶ 49) and concludes that these officers "acted to deprive the Mr. Huffer (sic) of the civil rights guaranteed to him, by the Fourth, Fifth, Eighth and Fourteenth Amendments" (¶ 50). Plaintiff's bare allegation that he was arrested "without probable cause" in violation of his constitutional rights is a legal conclusion, not a "well-pleaded" fact that must be taken as true for purposes of Rule 12. These attenuated allegations fail to state a viable claim under § 1983. As already discussed, a facially valid indictment returned by a properly constituted grand jury is conclusive on the question of probable cause for the defendant's arrest. See, e.g., Bakes v. City of Olmstead Falls, 73 Fed.Appx.

152, *157 (6th Cir. 2003) ("because plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim"); <u>Norman v. City of Bedford Heights</u>, 61 Fed.Appx. 129, 130 (6th Cir. 2003) (holding that because the grand jury had indicted plaintiff, "there cannot be a claim that the officers unlawfully arrested and detained him in violation of his constitutional rights").

Additionally, the complaint does not allege that Vivian Huffer and Danielle Bishop were acting under color of state law. Plaintiff may not proceed under § 1983 against private individuals who were not acting "under color of state law." <u>Tahfs v. Proctor</u>, 316 F.3d 584, 590-591 (6th Cir. 2003) (dismissing under Rule 12(b)(6) on such basis). These two private individuals were not "state actors," and their conduct in reporting domestic violence is not fairly attributable to the state of Ohio.[5] "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law' even if the information provided is false." <u>Moldowan v. City of Warren</u>, 578 F.3d 351, 399 (6th Cir. 2009); and see, e.g., <u>Ghaith v. Rauschenberger</u>, Slip Copy, 2010 WL 4982795 (E.D.Mich. 2010) (dismissing plaintiff's § 1983 claim that his ex-wife had provided false information to police and prosecutors for his arrest). Although plaintiff disagrees with the victim's report of

---

[5]The <u>Tahfs</u> decision discussed three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. <u>Id</u>. at 591. None of these apply here, and plaintiff does not contend otherwise.

domestic violence that ultimately led to his arrest and detention, his generalized allegations (including "conspiracy" and/or "malice" by the defendants) fail to satisfy basic pleading requirements. See, e.g., <u>Tahfs</u>, 316 F.3d 590 (observing that a plaintiff "may not simply list a series of state court rulings that have not gone as [he] would have liked, make the conclusory allegation that they are the result of corruption, and expect to survive a Rule 12(b)(6) motion"). The complaint does not adequately plead facts that would allow the Court to draw the reasonable inference that persons acting under color of state law deprived plaintiff of his constitutional rights by "maliciously prosecuting" him. <u>Iqbal</u>, 129 S.Ct. at 1949.

Absent any wrongful acts by its employees, Warren County and the City of Lebanon cannot be vicariously liable to plaintiff. <u>Monell</u>, 436 U.S. at 691; <u>Nerswick v. CSX Transportation, Inc</u>., 2011 WL 4119153 at *3 (6th Cir. (Ohio)). "A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 900 (6th Cir. 2004); see also, <u>Boykin v. Van Buren Township</u>, 479 F.3d 444, 450 (6th Cir. 2007). Plaintiff does not identify any city or county policies, and does not address the defendants' argument that they are not liable under <u>Monell</u>.

## G.   Whether Plaintiff's Claims for False Arrest, False Imprisonment, and § 1983 Violation Based on False Imprisonment are Time-Barred

Finally, the defendants assert that the plaintiff's claims of false arrest ("Sixth Claim" at ¶¶ 67-70), false imprisonment (Count Seven at ¶¶ 71-74), and violation of § 1983 due to "wrongful imprisonment" (Count Two at ¶¶ 28-33) are time-barred.

Ohio Revised Code § 2305.11 provides a one year statute of limitations for state claims of false arrest and false imprisonment. See Francis v. Cleveland, 78 Ohio App. 3d 593, 596 (Ohio Ct. App., 1992)(citing Alter v. Paul, 101 Ohio App. 139, 141-142 (1955) (holding that state claims for false arrest and false imprisonment must be brought within one year of arrest)).  With respect to alleged violation of 42 U.S.C. § 1983, such claims are governed by Ohio's personal injury statute of limitations, which is two years.  Ohio Rev. Code § 2305.10;  Wallace v. Kato, 549 U.S. 384, 387 (2007); Browning v. Pendleton, 869 F.2d 989, 992 (6th Cir. 1989).[6]  When a § 1983 claim is based on false arrest or false imprisonment, the claim  accrues on the date of arrest. McCune v. City of Grand Rapids, 842 F.2d 903, 906 (1988);  Haag v. Village of Camden, 23 Fed.Appx. 384 (6th Cir. 2001) ("Haag's § 1983 claim of an alleged wrongful arrest accrued at the time of his arrest");  Davis v. Clark Cty Bd. of Com'rs, Slip Copy, 2010 WL 333651 (S.D. Ohio) (cause of action for false imprisonment accrued upon arrest).

The complaint indicates that plaintiff was arrested on January 6, 2007 (doc. no. 1, ¶ 2), but did not file this lawsuit until over three years later on May 17, 2010. Defendants contend that these causes of action accrued on the date of arrest, whereas plaintiff contends they accrued on May 18, 2009, when his guilty pleas were vacated (doc. no. 41 at 19).  Plaintiff cites no authority for his argument.  Plaintiff appears to confuse the accrual of his false arrest/false imprisonment claims with the

---

[6]The limitations period for § 1985 actions is also two years.  Ohio Rev. Code § 2305.10.  Plaintiff complains of events in early 2007, but did not file suit until May 17, 2010.  Thus, even if a § 1985 conspiracy claim were properly pleaded, this claim would also likely be time-barred.

accrual of his malicious prosecution claim, which "does not accrue until the underlying conviction is invalidated." <u>Fox v. Desoto</u>, 489 F.3d 227, 235 (6th Cir. 2007) (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 489-90 (1994)). As plaintiff did not file his lawsuit until May 17, 2010, the claims for false arrest, false imprisonment, and violation of § 1983 due to "wrongful imprisonment" are time-barred.

## IV. Conclusion

The defendant prosecutors (Planas, Graber, and Hicks) are entitled to judgment in their favor on the basis of absolute prosecutorial immunity. The defendant probation officers (Sommers and Whaley) and the Clerk of Court (Morgan) are entitled to judgment on the basis of absolute quasi-judicial immunity. The defendant police officers are entitled to qualified immunity.

Plaintiff's claims of conspiracy, malicious prosecution, and violation of § 1983 based on malicious prosecution are all subject to dismissal pursuant to Rule 12(c) for the pleading deficiencies discussed herein. Given the complaint's vague allegations and lack of specific facts concerning acts by the individual Lebanon defendants, plaintiff fails to state any plausible claims against them. Defendants Warren County and the City of Lebanon are entitled to judgment on the pleadings and/or dismissal because respondeat superior provides no basis for liability and because plaintiff has not identified any county or city policies that harmed him. Plaintiff's § 1983 claim (based on malicious prosecution) is subject to dismissal because it is conclusory and inadequately pleaded, and moreover, the private individuals (Vivian Huffer and Danielle Bishop) were not acting under color of state

law. Finally, plaintiff's claims of false arrest, false imprisonment, and for violation of § 1983 based on false imprisonment are time-barred.

Accordingly, the "Motion to Dismiss" (doc. no. 29) by the Warren County defendants is <u>GRANTED</u> pursuant to Rule 12(c); the "Motion for Judgment on the Pleadings, or in the Alternative, to Dismiss" (doc. no. 30) by the Lebanon defendants is <u>GRANTED</u>; the pending "Motion to Stay Discovery" (doc. no. 43) is DENIED as MOOT; this case is DISMISSED and TERMINATED on the docket of this Court, with costs to plaintiff.

IT IS SO ORDERED.


       <u>     s/Herman J. Weber   </u>
Herman J. Weber
United States District Court